Good morning, and may it please the court. I'm Jeffrey Ehrlich for the Appellant Wilshire Manor, and I'm going to try to reserve five minutes of my time. This is an appeal from a summary judgment in favor of State Farm on Wilshire's claim that State Farm underpaid it for fire damage to its six-story apartment building. On appeal, State Farm defends the ruling, arguing on page one of its answering brief, that it fully reimbursed Wilshire for all documented damage caused by the fire as a matter of law. I don't think the record bears that assertion out. I think there are numerous triable issues of fact, and this morning I'll show you four. It only takes one to defeat this. Can I just get the legal framework here? One, does it matter? And two, what's your contention about what does it matter whether this is replacement coverage or not? And secondly, or even if it's a repair, if it's just repairs, are you still in the same place? And secondly, there's this argument about whether your position depends on code replacement or code upgrades or not. Well, in a larger sense, in a sort of meta sense, it matters because it was a replacement cost policy and the way that California defines section 2051.5 of the California Insurance Code sort of has a cascade of how the claim is supposed to be adjusted. And so with the replacement cost policy, if the insurer has, as State Farm did here, included a term that says that we don't have to pay full replacement value until you've done the replacement, the way the adjustment is supposed to work is that first that section 2051.5 subdivision A says that they have to pay actual cash value or what they would owe if the policy paid actual cash value. So then that turns you... But I thought the statute is, the policy is set up so that the insurer gets to choose whether to do repairs or replacement, even when it's a replacement policy. That is correct because the definition of actual cash value that gets imported into the policy. So we start with the replacement cost statute, which then because of the term that State Farm has included that says we don't have to pay for replacement costs initially, you have to do the replacement first. So then you look at what would be owed under an of the code. And section 2051 does give the insurer the right to replace or repair. So Wilshire had the right to repair. So does your position depend at all on whether they replaced or repaired? I mean, is your position that even if they were supposed to repair, they didn't repair? Yes. Okay. That's why this morning actually, although there's a lot of discussion about the legal standards in the briefs, what I was going to just talk about are the factual gaps. That's why I was trying to clarify that. Yeah. I guess I don't want to misread what you just answered to Judge Berzon. It didn't seem to me that really mattered whether it was replace or repair to you, but there were certain damages that nobody got paid for in any event. Right. That's correct. So the replace or repair is a supplemental issue. The big issue is, for instance, the Lurch Bates document. Right. The Lurch Bates document, you suggest the review shows that all the estimated damages were the result of code upgrades. No, it doesn't say that. Right. Okay. It doesn't say that at all. That's what I thought. It specifically says that the $850,000 is exclusive of the cost for the code upgrades. So, so I think you're right, and the coverage issues are interesting to people like me who pay lots of attention to coverage, and State Farm's analysis is consistently not correct, because in the district court, they denied that it was a replacement cost policy, and their adjustment has always proceeded as if it was never replacement cost policy, to the point where they purport to quote the statute for replacement cost coverage, but they actually put the wrong language in. So they cite the right statute number, but then they say, look, we did it just like the statute says, and it's the ACV statute. But for the purposes of the summary judgment, it doesn't matter, because there are tribal issues of fact about whether they paid what they were supposed to pay under any kind of policy. They only paid for temporary repairs to the elevators. It's just... The invoices indicate the payments were initial and temporary, right? And so what you're suggesting, as I understand, that since it was initial and temporary, that there is a question of fact as to whether CAV 2 elevator was ever repaired to its pre-loss condition. There's a question of fact about whether either elevator was repaired to its pre-loss. I understand that, but I'm talking about CAV number 2, CAV 2 first. Yes. In other words, it's true that the second elevator didn't work, but it was there and it was scheduled, slated for being upgraded. If after the fire, it's been damaged and cannibalized for parts, it's not in the same condition it was in before the fire. So your position is that even though it wasn't operable, it was essentially repairable for a lot less than it would be repairable for now? Exactly. Exactly. And you can't just say it didn't work, so you can cannibalize it for parts and leave it as a charred resting hulk. And because it never worked, we didn't have to do anything. And it's very clear State Farm concedes that only temporary repairs were made. If you look at page 29 of the brief and responding to my argument, the red brief says, Wilshire Manor notes that State Farm paid for temporary repairs, AOB at 29, but they were not followed by further repairs. That's exactly true. That's the problem, is that in essence, State Farm's saying, like, if it was a roof that was damaged in the fire, that if they threw a tarp over it to keep it from leaking, that that was a temporary repair and that discharged their obligation. So tribal issue number one, did they only pay for temporary repairs? Tribal issue two, did they even pay for the temporary repairs? There's an $18,400 invoice for the temporary repairs. Is the invoice in the record? Yes. It is? Yes. And there was references to it in the record, but it wasn't clear to me the invoice was there. Actually, I don't know if the invoice itself is. Instead, there's the State Farm's declaration of its adjuster refers to it in SER 2. Right. But that's why I asked you if the invoice itself is not in the record. No, the claim summary just lists it and then says it paid $0.00. That's a 2ER 77. And did they ever explain that? Who? State Farm. They never say why they didn't pay it. No. In fact, in their brief, what they say is that citing pages 43 and 44 of the red brief, they say there's no evidence of the invoice. And then they cite their own documents referring to the invoice. And then their declaration, the adjuster's declaration, Mr. Franklin says that it wasn't paid because such were the temporary repairs. And in fact, if you look at the claim note in 2ER 280, the January 23rd, I'm sorry, 2ER 279, the adjuster asked for permission to pay it, saying that it'd been reviewed and was reasonable. So he did an about face and then said it was unnecessary, but State Farm has never said why. And the record shows that the repairs that EK elevators did included replacing burnout rails and replacing sort of scavenging the parts from one that were available from one side of the unit to the other to make temporary repairs. So they clearly were the temporary repairs that State Farm is relying on to claim that it did repair. So it didn't even pay for the repairs. That's Tribal Issue 2. Tribal Issues 3 and 4 intertwined, and they go to the issue that you talked about, Judge Smith, that what kind of repairs did the elevators require? And we have, they concede that we, Wilshire, submitted the Lord's Base report before they made their decision. That's in the record at 2ER 118 and 120, and we discuss it at pages 17 and 18 of our AOB. And Lord's Base says, this is what it's going to take to repair and replace. It's going to cost $850,000 exclusive of the code upgrades. Now, in the district court, State Farm says, Judge Reel, you can ignore that just like we ignored it because that's all about code upgrades, and the city wasn't requiring any codes, except that if you read it, it doesn't, it says it's not for code upgrades. So on appeal, they do not advance the argument because anyone who's read the document would know it doesn't say that. So now their argument is at page 43 of the red brief, the report was not to replace the elevators, it was expressly to replace them, which is accurate in a sense, but it misses sort of the reality, which is the reason it was for recommended replacement is because the damage was so extensive that they were damaged beyond repair. So at minimum, there's a triable issue of fact about what repairs were needed and what was, how much it would cost. There was no other evidence. State Farm never got an elevator expert, never submitted anything in the district court. There was no evidence at all. They just simply said ignore the Lurch-Bakers report, and there's no grounds to do that. So I think that would pretty clearly justify reversal of the summary judgment. So on remand, the question is, is State Farm entitled to summary judgment on the bad faith claim? Because Judge Reel said if there's no coverage as a matter of law, there can't be bad faith. That is true, but if the converse is true as well, if there is coverage, then there's a triable issue. State Farm urges alternative grounds for review. Is this a contractual bad faith or a tortious bad faith? Tortious bad faith in the California law. Breach of the implied covenant in California is a tort law, I'm sure. Well, I know, but they're both parties. Right. And State Farm says it's a genuine dispute. But if you look at the Ninth Circuit's, your decision in Amadeo, which we quote, quote, it's not enough to say, as State Farm does, that you can grant summary judgment because our position was reasonable. This genuine dispute rule requires a finding for the district court or this court that their position was reasonable as a matter of law. In fact, at page 1162, it's – But you have some direct evidence of bad faith. Sure. I mean, they didn't pay the claim. No, but I thought you had this guy who says they told me to say this thing that wasn't true. Right. Amiri, the engineer, said he was – I mean, there is so much potential that a jury could find. They underpaid the claim. They misinterpreted their policy. They had dishonest experts. There are a multitude of tribal issues of facts that would allow a jury to find bad faith. But the truth is, Counselor, that the district court didn't evaluate this issue at all. That's true. And they didn't address it because the district court said there's no breach of contract. Right. And so, therefore, if there are genuine issues of disputable fact, then at that point, the breach, if you will, the bad faith claim, goes right back to the district judge. That's all I'm saying. That's all you're saying. That's all I'm saying. Well, why don't you move then to the request to continue the hearing? You know, with respect, I don't think I need to get to that because I think the issues are so clear. The one thing before my time runs out I do want to get to – Is there anything that you didn't get in that matters? No. There's – we could have made a better record, but the record that we made was ample to support the claims I'm making. I haven't had to reach in and look at any of the other stuff. That's why I'm not in the reply. Oh, you're not pushing that? Right. The one issue that I'm concerned about, though, is Judge Reel made a finding that Wilshire was foreclosed from proving up all of the evidence, anything that he can complain about in the adjustment, finding that it failed to cooperate. And I think that that is more triable issues of fact that foreclose it. First of all, there's no evidence of a failure to cooperate that's discussed. State Farm in the red brief discusses it at 44 to 49. They don't point to any evidence that says there was a single document that wasn't given, that they weren't given access to. So there's no support in the record. Second of all, the law in California is that an insurer has an independent duty to do a full investigation. You don't just get to rely on what the insured say and say, well, if you told us to investigate it, we will, but we only investigate as much as you tell us to. That is not how it works in California. And third, under California law in Campbell v. Allstate is a 1963 Supreme Court case that we cite. The policyholder can only have their claim foreclosed for lack of cooperation. If the insurance company shows that it has been substantially prejudiced by that lack, and the burdens on the insurer and prejudice is never presumed. And in response, State Farm- You want to save some time? Because you're almost out. I'm, finish my point. Okay. State Farm says, no, prejudice can be presumed. Citing a district court case in Martinez, it doesn't say that, doesn't use the word presumed. And the record here shows there's no prejudice. This isn't a third party case where after the fact, State Farm is being asked to, say, defend a liability case and the witnesses are gone. The building's there, it's unremediated. All they have to do is go and investigate and the damage is available. When we go back to the district court, we should be able to litigate whatever damage is available. Okay, thank you very much. I'll give you a minute in rebuttal. Yes, ma'am. Good morning. May it please the court? My name is Valerie Rojas and I represent State Farm General Insurance Company. I just wanted to first- Can you speak a little more into the mic, please? Sure. I just wanted to start first by clarifying the record. With respect to the Lurch-Bates report, it is in fact based upon Lurch-Bates' assumption that the elevators need to be brought up to current level. It explicitly isn't. I don't understand how you can say that. Explicitly it isn't. If you look at ER 120, the last paragraph of the Lurch-Bates report talks about a complete renovation of the hoistway. A hoistway, by definition, is the same thing as a shaft. A complete renovation of the hoistway in order to bring it up to, quote unquote, current code. Current code- I think it noted that it may need to be brought up to code, but the numbers they're giving were not for bringing it up to code. That was my understanding. The numbers they're offering are to bring it up to current code. Well, it says that it's numbers exclusive of bringing it up to code. I'm referring to ER 120. When you're talking about a complete renovation of the shaft, Lurch-Bates themselves said it's based upon their assumption that it has to be brought up to current code. Well, there's no question they think that the elevator needs to be brought up to code, but the question is whether there's damages in that report that are not for bringing up to code that need to be determined by a jury. That you can't determine on summary judgment simply because one wants to ignore it. That's the question. I mean, reading the report, I guess you're telling me, if I read the report again, and I'll be glad to go read it again, that there is no way that that report says these are the damages exclusive of the damages for bringing up to code. You're correct, Your Honor. It doesn't use those words exclusively. What it says in the place that you were noting, it is our recommendation that there is a total elevator replacement on both elevators with all new components. In addition, wasteways need to be thoroughly renovated and brought up to current local code, which appears to be a common, but not the basis for the estimate, which is what it says later. They're saying, yes, it needs to be brought up to code, but we're not including that in our estimate. That's my understanding. You're right, Your Honor. And what State Farm is... Yeah, I am right. So, therefore, what you said isn't true. It does say that. It does say that it's based upon bringing a complete hoistway up to current code. No, it doesn't say that. It says that the hoistway needs to be brought up to code, but then it says that the estimate, it says in addition. That's in addition to what it is that's being covered by this estimate. Your Honor, from the beginning, this case was based upon the replacement of these elevators pursuant to the city's requirement. State Farm was told repeatedly that the replacement would need to be done pursuant to the city's requirement. Well, let me ask you something. Let's take the nonoperative elevator, right? Yeah. Apparently, State Farm's position is that because it wasn't operating at that moment, it doesn't have to pay anything for it. That's not accurate, Your Honor. State Farm paid for repairs to both elevators. Robinson's Building Maintenance on ER 280 and 273 described their invoices for what everybody is calling temporary repairs. Well, right, but it did repair that one. So, and then they said several times, as I remember, it's nonoperative, so we're not going to do anything to it. And, I mean, that seems crazy to me. I mean, if I have a house with a roof, and the roof has a little hole in it, and it's leaking, and then I have a big fire, so it has to be fixed, right? Meanwhile, I have a big fire, and now I need a whole new roof. Why isn't that something that's compensable? It is, Your Honor, and State Farm did pay. Even though the roof wasn't working in the sense that it was leaking. State Farm did pay for remediation efforts on the second car. At 273 and 270 of the ER, Robinson's Building describes that it's a subcontractor of EK Elevators. It describes what it did to both cars. This is a shaft that is not divided. They clean the entire shaft. You can't clean one without cleaning the other. And that's described to Mr. Franklin. Mr. Franklin did not pay the EK Elevator invoice. He's the general contractor. He describes in his declaration that he didn't pay it because it didn't appear warranted or caused by the fire damage. Why that's important is because EK Elevator also tells us that they have been working on these elevators for at least 10 years. EK Elevators also tells us that they conducted a complete modernization of one in 2007 without replacement of the motor, and were undertaking repairs. I guess the question is why there aren't tributaries of fact about all this. And there are not. There is no EK invoice in the record. Curiously, it's not. Well, it's certainly referred to in your own schedules. It refers to the invoice and it says you're not paying it. That is correct. EK Elevators invoice was submitted along with the two Robinson's Building maintenance invoices. EK Elevators declaration, he never discusses an invoice. He never attaches one. Mr. Nahorian, the managing member of Wilshire Manor, talks about Wilshire paying EK, but he never talks about what invoice or even an amount of an invoice. Well, just a minute. Let's think about this EK Elevator invoice. That's 10615, right? The invoice. The invoice. EK Elevators invoice. And you assert that you've repaired CAP-2 Elevator to its pre-loss condition. But the invoices all say that the payments were for initial and temporary. What do I do with that? And here's why, Your Honor. From the beginning. Not why. Answer my question. Even looking at the invoices to see if you're right, the invoices do not say end of story. They all say initial and temporary. Everybody was under the assumption that these were temporary because we were under the assumption that the city was going to require a complete renovation and widening of the shaft. That was not done. But again, this seems like an issue of fact that the judge cannot make based on the invoices. I look at these invoices. I can't say they're paid in full. They say initial and temporary. And the fact that they're initial and temporary agrees with the Lurch-Bates report, which, as I understand it, evaluated the CAP-2 Elevator after it was put back into service. So I said to myself, how do I say that this has been fully paid? The claim file references the numerous reports to the elevator and the shaft as temporary. The declarations by EFM Coffeylove of EK Elevators presents issues of fact with regard to the extent of the fire damage and what additional repairs are required. I guess I'm trying to figure out how I get to the end. There have been no additional repairs to these elevators. There was never a contention that- Well, just because there's no additional repairs doesn't mean you should have not repaired them to the fullest extent. Not just temporary. Put them back together. Your Honor, when this case was filed, there was never an issue with the EK Elevator invoice. At SER 22 and 25, where Wilshire Manor is responding to interrogatories, they are discussing the Lurch-Bates report only based on the assumption that eventually these elevators would need to be completely renovated and ADA compliant. That's why everyone is using the word temporary. There's no evidence that State Farm didn't pay an invoice for the repairs to the elevators. There's no invoice. Well, when I look at your summary of loss statement, it says we've made a payment for Robinson's building maintenance invoice, Robinson's building maintenance invoice 11-20. That's 11-19, 11-20. For Shock U electric invoice 2016-69. But it also shows that you did not pay that EK elevator invoice 106-15. Right, and Mr. Franklin explains in his declaration why that wasn't paid. And there is no evidence to refute. I guess I'm still, I'm having a tough time. Mr. Franklin's affidavit is just evidence. Evidence which can be contravened by other evidence. And there's the invoice in the record. And it's initial and temporary. And so, therefore, I'm trying to figure out how do I say there's no genuine issue of fact. Because we have no invoice. We have no evidence of what was. But we do have an invoice. I'm quoting from it. You're quoting from our summary of loss. That's correct. No, he's quoting from the invoice that was paid, but said that it was temporary. Oh, the Robinson's building maintenance? Yes. That's not in the record. But, yeah, that was paid. There's a description of the invoices in the record at the claim notes that I had mentioned previously at 280 and 273. The Robinson's building maintenance subcontractors are the ones who performed the work to the elevators. There were no additional invoices submitted for any additional work. Those invoices were submitted. I mean, let's just take a minor thing. Apparently, the way they repaired the working elevator was by cannibalizing the non-working elevator, right? That's what we assume. So the non-working elevator is obviously in worse condition than it was before. Well, that depends on how you look at it. Why does it depend how you look at it? It now needs at least those parts. Correct. Right. So it's in worse condition than it was before as a result of the fire because that's the way he got the other one operating. Why is it right there a conflict in the record? Because Robinson's building replaced and repaired parts in those both elevators. No. My understanding is that it did it by taking parts from the one that wasn't working at the moment to the other one. In addition, Robinson's also advised State Farm that they got new components. What those were, I'm not sure. They got new parts for the non-working elevator? No, for the working elevator. Right. So the non-working elevator is now in worse condition than it was. I mean, just without getting into more details, the non-working elevator is now more non-working than it was before. Well, non-working, to me, is non-working. But that's where I gave you my roof hypothetical. I mean, a roof with a little hole is different than a roof with a big hole. This was an elevator that had a problem, and now it has a much bigger problem. Your Honor, if Robinson's had told us, had submitted their invoice with parts for that second elevator, the inoperable elevator, it would have been paid. But to replace it entirely would be to take another example. If you have a kitchen fire, and you have an old refrigerator, and it's not working, and the fire damages the hose to the ice maker, the ice maker breaks, and you need a technician out there to repair it. What State Farm did was paid for the repairs that the insured chose to make. It is not required to go buy an entirely new refrigerator that's, you know, a newer model and up to current energy codes. It's only required to repair... If the elevator's not fixable, it is. Pardon? If this was a refrigerator that wasn't in great shape, but it was operating. And now, because of the fire, it's now beyond repair. My understanding is that they do have to pay for the new refrigerator. Is that not right? If it was damaged beyond repair? Yes, by the fire, even though it was already not terrific, but it was operating. Right, but there's no evidence that these elevators couldn't be repaired. They were repaired. Let me ask you... No, they weren't. One of them was. Go ahead, yes. I want to talk about this replacement cost provision, because I think it's a red herring. As I understand this, State Farm did not elect the replacement cost provision they elected to repair, right? Correct. So why are we... We don't have to deal with replacement costs, correct? That's correct, Your Honor. The... And so all we're looking at is whether there is, in fact, all of the repairs up to the former level of the elevators were paid or not by State Farm, correct? What we're looking at is whether State Farm paid all of the... Paid the insured for all of the invoices of the actual repairs made. Of the repairs made to bring it up to the level it was prior to the fire. Yes. Or would have been made to bring it up. Are you claiming that because they didn't make the repairs, you don't have to pay? If they don't... If they choose not to make the repairs... But if you said... So you're not claiming that because they so far haven't made them, that you're not responsible? No, I'm saying there's no evidence that we haven't paid for some repairs. We have paid for the repairs. Let me go further. And as I address this claim for bad faith, if in fact there are genuine issues of fact as it relates to whether the repairs were paid, then the bad faith needs to go back too, right? That's correct, Your Honor. So you don't dispute that? Well, it would go back unless... I mean, you dispute that there was a problem with the breach. But if we're sending it back as to the breach because we think there's a genuine issue of fact, we've got to send it back for the bad faith as well, correct? No, not necessarily. If there's a genuine issue, if there's a genuine dispute, the court can find as a matter of law that there was no bad faith. And in this record... Well, but just a minute. You're suggesting that there's no evidence of bad faith if in fact there are genuine issues of fact as to whether there was a breach? That's correct, Your Honor. What about the affidavit from the gentleman who says he was told to say something that wasn't true about the elevators when he had not even inspected them? You're talking about Mr. O'Meary? Yes. Mr. O'Meary's declaration is material for his attempt to prove that the city was requiring code upgrades. Since conducting the deposition of the city's 30B6 witness about these elevators, we know that that wasn't accurate anyway. Well, now just a minute. Just because you have a deposition of one side, you've got another deposition of the other side, which suggests just the opposite. But the city has the ultimate say on whether these elevators have to be renovated to become ADA compliant. But I don't really understand your answer anyway, because whatever he was testifying to, he testified that it was told to lie. Right? I mean, that's what his affidavit says. He was told not to go near the elevators. And to say he did. And to say he did. Right. Right. So whatever he was directly involved in, isn't that evidence that there was bad faith in this whole operation? No, Your Honor, because even if that were true, he wasn't hired to renovate or remodel the elevators. And Mary is not... Yes, but he was told to say that he was. That he was what? Was responsible for this and to give evidence about it. He's a structural engineer for the entire building, not necessarily just the elevators. He wasn't supposed to be going to the elevators. That's correct. And he said that. And then he said, but they told me anyway to say that I had an opinion about the elevators when I didn't. Yes, Your Honor. All right. So he was told to say something that wasn't true. That's what he claims. That's what he claims. So isn't that evidence of bad faith? No, Your Honor. All right. Your time is up. Thank you. Yes, sir. One minute. I'd wait for Bob, Your Honor. I'm sorry? I'd wait for Bob. Thank you very much. All right. The case of Wilshire Manor Apartments v. State Farm is submitted.
judges: Berzon, N.R. Smith, Nye